**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**KEVIN TANNER; LACY MILES;
and JAMES WALKER**                                                                                          **PLAINTIFFS**

v.                              **CASE NO. 4:08-CV-00099 BSM**

**ENTERGY ARKANSAS**                                                                                        **DEFENDANT**

**ORDER**

Defendant's motion for summary judgment is granted as to the claims of James Walker (Doc. No. 41), denied as to the claims of Lacy Miles (Doc. No. 44), and granted as to the claims of Kevin Tanner (Doc. No. 47). In early 2007, Defendant Entergy Arkansas hired twenty-eight new employees in the State of Arkansas during a one month period. Plaintiffs James Walker, Lacy Miles, and Kevin Tanner applied for positions but were not hired. Plaintiffs filed this case alleging that Entergy did not hire them because they are black, in violation of Title VII and 42 U.S.C. § 1981.

I.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the

record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## II. TITLE VII AND 42 U.S.C. § 1981

The analysis for discrimination claims under Title VII and 42 U.S.C. § 1981 are identical. *Putman v. Unity Health System*, 348 F.3d 732, 735 n.2 (8th Cir. 2003). In Title VII and 42 U.S.C. § 1981 race discrimination cases, a plaintiff may survive a defendant's motion for summary judgment by presenting "direct evidence of discrimination, that is evidence showing a specific link between the alleged discriminatory animus and the challenged decision sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *McGinnis v. Union*

*Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007). Plaintiffs do not assert that any direct evidence of discrimination exists.

"Alternatively, if the plaintiff lacks direct evidence of discrimination, the plaintiff may survive the defendant's motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id.* "Under the *McDonnell Douglas* framework, the plaintiff bears the burden of establishing a prima facie case of discrimination." *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008).

To establish a prima facie case of discriminatory failure to hire, a plaintiff must prove that: (1) he is a member of a protected class; (2) he was qualified for the position for which he applied; (3) he was not chosen for that position; and (4) whites with the same qualifications as the plaintiff were chosen. *White v. McDonnell Douglas Corp.*, 985 F.2d 434, 435 (8th Cir. 1993). The defendant must then rebut the presumption of discrimination by producing evidence that the plaintiff was rejected for a legitimate, nondiscriminatory reason, and if the defendant does so, the plaintiff must establish the existence of facts which if proven at trial would permit a jury to conclude that the defendant's proffered reason is pretextual. *Krenik v. County of Le Sueur*, 47 F.3d 953, 958 (8th Cir. 1995).

### III. JAMES WALKER'S CLAIMS

Summary judgment is granted as to Walker's claims because he has failed to show that he was denied employment due to his race. This is the case because, "[t]o establish the

3

existence of a genuine issue of material fact, a plaintiff may not merely point to unsupported self-serving allegations." *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (internal quotations omitted). "The plaintiff must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." *Id*. (internal quotations omitted).

Entergy asserts that Walker's claims should be dismissed because he cannot establish a prima facie case. Specifically, Entergy contends that Walker was not similarly situated to any of the persons that Entergy hired. Indeed, Entergy alleges that Walker was a former Entergy subcontractor who had performed substandard work, and none of the persons hired were former subcontractors who had performed substandard work.

Walker testified that he worked for Entergy from 1979 until 1995, at which time he voluntarily left and received severance pay. Ex. B, Walker dep. p. 11, defendant's motion for summary judgment as to Walker (Doc. No. 41) ("def.'s Walker motion). From 2001 until February 2005, Walker was the owner of L&J Utility ("L&J"), which was in the business of installing underground utility lines, electrical lines, and electrical utilities. *Id*. at 13-14. Ninety-five percent of L&J's contracts were with Entergy, and he and his employees did some work with North Little Rock and Camp Robinson. *Id*. at 14. Walker testified that he shut L&J down in February 2005 and went into real estate in 2006. *Id*.

It is undisputed that in March 2007, Walker applied for Relay Tech and Substation Repairman positions with Entergy in Central Arkansas, and that Jerry Tanner was the hiring

manager for those positions. Walker testified that he applied for sixteen positions and was turned down for all positions due to lack of experience, according to an e-mail he received. *Id*. at 11. He also testified that one of the positions that he applied for was cancelled, and Entergy hired no one for the position. *Id*. at 44-45. Walker testified that when he called about the open positions, he was told that Entergy had his application and was "looking at some other people within the company that we'll have to hire first," but Walker later learned that they hired a number of people outside the company with less or no experience and only one female and one "foreign guy." *Id*. at 34. Walker admitted, however, that he does not know who was hired for the positions, nor does he know anything about the qualifications of the individuals who were hired for the positions. *Id*. at 47-48, 54-55, 57-58.

Entergy submits the affidavit of its hiring manager, Jerry Tanner, who made the hiring decisions for the positions that Walker applied for in March 2007. Ex. C, Tanner Aff., def.'s Walker motion. Tanner states that Walker applied for one Relay Tech Helper position, two Relay Technician positions, and one Substation Repairman position. *Id*. He states that he made the decision not to interview or hire Walker for any of these positions because he discovered that L&J, Walker's company, had unsatisfactorily performed some work for Entergy. *Id*. He also states that he learned that Entergy insisted that L&J complete the work to its satisfaction, but L&J refused. *Id*. He further states that none of the individuals he interviewed and hired for these positions were subcontractors for Entergy who had unsatisfactory histories with Entergy. *Id.* He further states that Walker's race played no role

in the decision not to hire Walker, and that he did not know Walker's race at the time he made the decisions. *Id*.

In response, Walker submits the resumes of those who were hired and asserts that he was equally or more qualified for the Relay Tech or Substation Repairman positions. This assertion cannot be verified because he did not provide the court with a job description or his own resume. Walker asserts that a pattern and practice of discrimination is demonstrated by Entergy failing to fill even one of its 28 positions with an black applicant, despite the fact that there were more than 20 black applicants.

Walker also submits his affidavit in which he points out that, while subcontracting for Entergy, he never received a complaint regarding his work performance and was never called out to redo any job. Ex. A, Walker aff., Walker's response to the motion for summary judgment ("Walker's resp."). Walker states that the only issue he had with Entergy was that Entergy's contracting secretary would occasionally issue him a work order with the wrong date (before the job was ready to perform), and when he would contact her to correct the work order, she would merely re-print the erroneous work order. *Id*. Walker asserts that Entergy has failed to submit any documentation supporting its claim that his company failed to perform satisfactorily.

In its reply brief, Entergy submits records documenting a number of complaints that Entergy had with Walker's work while he was subcontracting for Entergy. Indeed, Walker's signature appears on a document dated April 28, 2005, from Roger Smith, Entergy's

6

compliance officer, who notifies Walker of several complaints regarding L&J's work performance. Ex. A, def.'s Walker reply.

Although these documents support Entergy's position that it had a number of complaints with the work performed by Walker and L&J, the court is concerned that Entergy produced these documents only when it filed its reply to the motion for summary judgment. Anticipating this concern, Entergy states that, during discovery, Walker never requested documentation in support of Jerry Tanner's testimony that L&J performed unsatisfactory work and only informally requested such documentation during Jerry Tanner's deposition. Entergy states that it has now provided Walker a copies of these documents.

Production of these documents was required by Federal Rule of Civil Procedure 26(a)(1)(A)(ii) which provides that:

> [A] party must, without awaiting a discovery request, provide to other parties:
> . . .
>> (ii) a copy of--or a description by category and location of--all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support claims or defenses, unless solely for impeachment . . .

It is without question that Entergy's defense against Walker rests on Tanner's testimony and the supporting documents that have now been produced to Walker. Of course Entergy cannot argue that it is merely using the documents to impeach Walker's affidavit testimony because impeachment is usually associated with factual disputes and Entergy is using the documents to show that there are no factual disputes and that summary judgment should be granted.

Notwithstanding this concern, when deciding whether to grant summary judgment, courts must determine whether there are real issues in dispute to be tried. Indeed, even if it is assumed that Walker can establish a prima facie case, Entergy has set forth a legitimate, nondiscriminatory reason for failing to hire Walker and Walker has failed to show pretext. Nothing in the record disputes Jerry Tanner's statements that he declined to hire Walker based on assessments showing that Walker's company had performed poorly when it subcontracted for Entergy. Further, nothing indicates that Jerry Tanner even knew Walker's race at the time he made the hiring decision.

The pretext inquiry is "limited to whether the employer gave an honest explanation of its behavior, not whether its action was wise, fair or correct." *McKay v. United States Dep't of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003) (internal quotations omitted). Thus, the proper inquiry is not whether Entergy was factually correct in determining that Walker's company had a history of poorly performing work for Entergy; rather, the proper inquiry is whether Entergy honestly believed that Walker had such a history. *Johnson v. AT&T Corp.*, 422 F.3d 756, 762 (8th Cir. 2005). Even if Entergy had no solid proof about the poor performance of Walker's company and was mistaken in its belief regarding Walker's company, such a mistake does not automatically prove that Entergy was motivated by unlawful discrimination. *Id.* "[T]he showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning" for failing to hire an applicant. *Id.* The applicant must "show that the circumstances permit a

reasonable inference to be drawn that the real reason" the employer failed to hire the applicant was because of his race. *Id*.

Furthermore, although it is very peculiar, Walker cannot rely solely on the fact that no black people were hired for the open positions. He has not shown that there was a company-wide policy of discrimination or that the hiring decisions were made by the same person. Although statistical evidence "may support a finding of pretext, particularly where there are independent, direct grounds for disbelieving the employer's explanation," the evidence Walker submits is insufficient to establish a genuine issue of pretext. *Bogren v. Minnesota*, 236 F.3d 399, 406 (8th Cir. 2000) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 778 (8th Cir. 1995)) (citing cases). As in *Bogren*, there is no independent evidence supporting pretext, and the statistics presented by Walker do not settle the issue. Summary judgment is therefore appropriate as to Walker's claims.

## IV. LACY MILES'S CLAIMS

Entergy's motion for summary judgment as to the claims of Lacy Miles is denied because the record does not support it. Importantly, the record contains no job description for the position for which Miles applied and it is impossible to make any judgment as to the qualifications of the two individuals. Further, the record does not show whether an applicant will be considered for jobs throughout Arkansas if the applicant indicates that he or she is willing to travel or relocate.

9

In early 2007, Miles applied for a Relay Tech position with Entergy in Union County, Arkansas. It is undisputed that after taking a test, Miles was asked to come to Little Rock for an interview in late February or early March 2007. It is also undisputed that Drew Clem interviewed both Miles and the successful applicant, Joshua Trotter. Miles sued Entergy claiming that the decision to hire Trotter was based on race, in that he is black and Trotter is white.

Entergy asserts that summary judgment is appropriate as to Lacy Miles because he cannot establish a prima facie case of race discrimination. Specifically, Entergy asserts that Miles cannot show that he possessed qualifications similar to Trotter's, or that Miles was more qualified than Trotter. Entergy also asserts that Miles cannot show that Entergy's articulated reason for selecting Trotter is a pretext for unlawful discrimination.

Miles testified that he was told that Entergy hired someone from the truck repair shop for the position he applied for, but he does not have any information about the qualifications, education, or experience of that person. Ex. B, Miles dep. pp. 25-26, defendant's motion for summary judgment as to Miles (Doc. No. 44) ("def.'s Miles motion). Miles testified that one of the people that works with Trotter told Miles that Miles was more qualified than Trotter. *Id*. at 25.

In his affidavit, Clem states that he was the hiring manager in March 2007 in the El Dorado Transmission Office. Ex. C, Clem aff., def.'s Miles motion. He states that he determined that Trotter was more qualified for the position than Miles based upon Trotter's

application, interview, and previous experience in training. *Id.* Clem also states that Miles had no similar education and his only relevant experience was driving a vacuum truck, and thus, Miles did not possess the minimal qualifications for the position. *Id.* Clem states that the fact that Miles was black played no part in his decision to hire Trotter. *Id.* Finally, Clem states that he did not interview or otherwise handle applications for positions in Little Rock and Pine Bluff. *Id.*

In response, Miles asserts that he would not have been asked to interview if he did not meet the minimum qualifications for the position. He also asserts that neither he nor Trotter had a degree in electricity. Miles notes that although he had taken classes in electricity, Trotter had a decree in electronics, and thus, Trotter had no more training in electricity than he did. Miles submits his resume and states that he was the Ergonomic Team Leader for Cooper Standard, which performed electricity work. He worked for Prescolight for four years producing light fixtures. And, although he worked for Prescolight, Cooper Standard, and Schuller Drilling since 1990, Trotter only began working in 1999.

Miles asserts that he made himself eligible for positions in Arkansas other than the Relay Tech Helper position in Union County, because he made it clear on his application that he was willing to relocate. Miles also asserts that the fact that none of the 28 positions were filled with African-American applicants supports an inference of a pattern and practice of racial discrimination.

In its reply, Entergy asserts that there is no support for the claim that Miles had more education than Trotter. Entergy states that Miles testified in his deposition that during his time at Cooper, he primarily worked as a forklift driver. Ex. A, Miles dep. p. 15, def.'s Miles reply. Entergy contends that Miles is simply offering his subjective opinion that he believes he was more qualified than another applicant, which is irrelevant in the face of the testimony of the decision maker.

There are material issues of fact in dispute regarding Miles's claims against Entergy. Therefore, summary judgment should be denied.

## V.  KEVIN TANNER'S CLAIMS

Entergy's motion for summary judgment as to Kevin Tanner's claims is granted and his claims are therefore dismissed with prejudice.

Entergy asserts that it is entitled to judgment as a matter of law as to plaintiff Kevin Tanner because Tanner cannot establish a prima facie case of race discrimination. Particularly, Entergy asserts that Tanner is not able to show that there were circumstances giving rise to an inference of intentional race discrimination which caused his non-selection for the Relay Tech Helper position in Pine Bluff. Entergy also asserts that summary judgment is appropriate because Tanner cannot show that Entergy's stated reason for Tanner's non-selection is a pretext for race discrimination.

Tanner has been an employee of Entergy since 2001. He testified that he has most recently been employed as a Meter Service installer. Ex. A, Tanner dep. p. 18, defendant's

motion for summary judgment as to Tanner (Doc. No. 47) ("def.'s Tanner motion). In March 2007, Tanner applied online for a Relay Tech Helper position in Pine Bluff.  Robert Britton ("Britton") was the hiring manager for the position and several other positions, including the Substation Repair Helper position in Wynne, Arkansas, but was not involved in hiring for the positions in Little Rock, El Dorado, or Magnolia.  Britton interviewed individuals for the position in Wynne, Arkansas first, at which time he interviewed Jeremy Williams ("Williams").

In his affidavit, Britton states that he believed Williams was very qualified for the Pine Bluff Relay Tech Helper position.  Ex. B, Britton aff., def.'s Tanner motion. He notes that Williams was an Avionics Technician for the United States Air Force and was responsible for installing and troubleshooting wire repair on avionics and flight control systems.  *Id*. Britton also states that Williams performed the same duties for Dassault Falcon Jet as a Flight Avionics Technician after leaving the Air Force in 2007.  *Id*.  Britton states that because he had already decided to hire Williams, he did not consider or interview any applicants, white or black, for the position of Relay Tech Helper in Pine Bluff, and that is why he told Tanner that he had "slipped through the cracks."  *Id*.  Finally, Britton states that he does not know and has not met Tanner, he did not know Tanner's race at the time he decided to hire Williams, and Tanner's race played no part in his decision.  *Id*.

Tanner states that it is a widely held belief at Entergy that Entergy will first hire qualified internal candidates before seeking employees externally.  Tanner notes that he was

an internal candidate and was qualified for the position, as he possesses two electronics degrees and scored high enough on the exam to have been notified that he would be interviewed. Tanner states that Pine Bluff, Arkansas, and the county in which Pine Bluff sits, are predominately black, and because Britton had worked in the area for a number of years, he was aware of this fact. Tanner also states that none of the individuals hired for the 28 positions are black. The court notes that the spreadsheet submitted by Tanner apparently contains the names of the applicants for the Relay Tech Helper position in Little Rock, not a Pine Bluff position.

Tanner asserts that he made it known on his application that he was willing to move or travel. Tanner states that Britton testified that he believed the Pine Bluff applicants would have the opportunity to be hired in the Central Arkansas area. Tanner has not submitted any such policy of Entergy. The court notes, however, that Tanner testified in his deposition that he was not interested in working anywhere but Pine Bluff. Ex. A, Tanner dep. p. 31, def.'s Tanner motion.

In its reply, Entergy submits the applicant flow sheet reflecting the applicant pool for the two Wynne positions, noting that several applicants were black. Entergy states that Tanner has failed to submit any proof that, and has failed to request that the court take judicial notice that, Pine Bluff, Arkansas, and the county in which Pine Bluff sits, are predominantly black. Entergy also states that Tanner has no evidence that Britton knows the racial make-up of Pine Bluff. Entergy notes that Tanner has also failed to attempt to make

a comparison to the racial composition of the population of Wynne, Arkansas, or Cross County. Entergy asserts that these "facts" have no bearing on Tanner's claim because the material fact is that Britton did not interview any of the applicants from the Pine Bluff pool, whether black or white. Moreover, Entergy states that Tanner has not offered any proof of, or a comparison to the available workforce, much less a comparison with reference to the skill necessary to be a Relay Tech Helper, and thus, evidence of Pine Bluff's racial make-up is not probative of pretext or intentional discrimination. *See O'Neal v. Riceland Foods*, 684 F.2d 577 (8th Cir. 1982); *Miller v. Weber*, 577 F.2d 75 (8th Cir. 1978).

Entergy also asserts that Tanner's subjective belief that longevity with Entergy is an important job qualification does nothing to advance his claim. Finally, Entergy asserts that it is irrelevant that none of the positions were filled with black applicants, comparing the facts to those in *Bogren*.

Even assuming Tanner has established a prima facie case, the court finds that Entergy has set forth a legitimate, nondiscriminatory reason for failing to hire Tanner and Tanner has failed to show pretext. Britton did not consider or interview any applicants in the Pine Bluff pool, whether black or white, because he had already decided to hire a candidate he interviewed in Wynne. Further, there is no evidence that Britton knew Tanner's race at the time he decided to hire Williams. Here, as in *Bogren*, there is no independent evidence to support a finding of pretext, and the statistics presented by Tanner are not probative of the

reason Entergy failed to hire him. 236 F.3d at 406. Summary judgment is therefore granted as to Tanner's claims.

Accordingly, summary judgment is granted as to the claims of James Walker (Doc. No. 41), denied as to the claims of Lacy Miles (Doc. No. 44), and granted as to the claims of Kevin Tanner (Doc. No. 47).

IT IS SO ORDERED THIS 6th day of July, 2009.

                                              _____
                                              UNITED STATES DISTRICT JUDGE